UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
ABDUL REHMAN KARIM SALEH,

                    Plaintiff,

-against-

SULKA TRADING LTD., and A.
SULKA TRADING COMPANY LIMITED,

                    Defendants.
```

19 Civ. 8488 (LAP)

<u>MEMORANDUM & ORDER</u>

LORETTA A. PRESKA, Senior United States District Judge:

Defendants SULKA TRADING LTD. and A. SULKA TRADING COMPANY LIMITED ("Defendants") move under Federal Rule of Civil Procedure 12(b)(1) to dismiss the Complaint, (Complaint ("Compl."), dated Sept. 12, 2019 [dkt. no. 1]), filed by Plaintiff Abdul Rehman Karim Saleh ("Mr. Saleh" or "Plaintiff").  (<u>See</u> Notice of Defendants' Motion to Dismiss, dated Oct. 17, 2019 [dkt. no. 15].)  Defendants contend that there is no actual controversy between the parties, and the court lacks subject matter jurisdiction under the Declaratory Judgment Act (the "DJA"), 28 U.S.C. § 2201, which Mr. Saleh disputes.  (Defendants' Memorandum of Law in Support of Motion to Dismiss Complaint ("Def. Mem."), dated Oct. 17, 2019 [dkt. no. 16], at 1; <u>see also</u> Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss Complaint ("Opp."), dated November 14, 2019 [dkt. no. 22].)  Alternatively, Defendants request that the Court exercise its discretion in declining to hear Plaintiff's

request for declaratory judgment.   (See Id. at 15; Defendants'
Reply Memorandum of Law in Support ("Reply"), dated Nov. 26, 2019
[dkt. no. 27], at 3.)[1]

For the reasons set forth below, Defendants' motion is GRANTED
without prejudice.

I.   BACKGROUND

The Court is no stranger to this dispute. Mr. Saleh's request
for declaratory relief is largely duplicative of a prior action
brought in 2018, which itself was dismissed for lack of subject
matter jurisdiction, there being no justiciable controversy
between the parties.   See Saleh v. Sulka Trading Ltd., No. 18 civ.
9299 (LAP), 2019 WL 3711770 (S.D.N.Y. Jul. 15, 2019).[2] For the
purposes of this Order, the Court presumes familiarity with the
facts underlying Mr. Saleh's prior action but will recount them as
is necessary and insofar as they differ from the instant facts.

---

[1] Mr. Saleh also filed a sur-reply declaration in response to
Sulka's reply papers with the Court's leave.   (See Sur-Reply
Declaration of Abdul Rehman Karim Saleh ("Saleh Sur-Reply Decl."),
dated December 5, 2019 [dkt. no. 29-1].)

[2] That dismissal was recently affirmed in all respects by the Court
of Appeals.   See Saleh v. Sulka Trading Ltd., 957 F.3d 348 (2d
Cir. 2020).   The Court of Appeals emphasized that "Mr. Saleh's
proposed plans [were] too nebulous and ephemeral to support the
conclusion that he has engaged in a course of conduct evidencing
a definite intent and apparent ability to sell his products in the
United States." Id. at 355 (internal citations and quotation marks
omitted)(emphasis in original).

Defendant Sulka Trading Ltd. is a corporation organized under the laws of the British Virgin Islands. (Compl. ¶ 8.)   Defendant A. Sulka Trading Company is a United Kingdom company. (Id. ¶ 9.) Defendants are successors to prior business entities that used the mark SULKA in the United States and foreign commerce in connection with various goods. (Id. ¶ 10.)   Defendants own five trademark registrations for the mark SULKA ("the Mark"). (Id.; see also Def. Mem. at 4.)

Mr. Saleh is an individual living in Thailand. (Compl. ¶ 3.) He has submitted an application to the United States Patent and Trademark Office ("USPTO") for the mark SULKA. (Id. ¶ 4.)   The proceedings before the USPTO are currently halted pending resolution of this litigation. (Id.)

In his complaint, Mr. Saleh claims he has "entered into a partnership with another [unnamed] individual in India, whose purpose it is to manufacture and market apparel and other goods, including under the trademark SULKA." (Id. ¶ 5(a).)  Additionally, the supposed partnership "owns and operates the website sulka-phulka.com which currently offers apparel products [bearing the SULKA mark] for sale to the United States." (Id. ¶ 5(b).)  Finally, Mr. Saleh claims he has "initiated the process of using Amazon.com and other selling platforms, such as Alibaba.com and eBay.com, to offer and sell [SULKA-branded products in] the United States[.]" (Id. ¶ 6.)

On August 28, 2018, Mr. Saleh's counsel wrote to Defendants' counsel, stating that Mr. Saleh had filed an intent-to-use application with the USPTO for the SULKA mark, that he planned to enter the U.S. market, and that he believed Defendants had abandoned their rights in the Mark.   (Id. ¶ 12; Exhibit A to Declaration of John P. Margiotta ("Margiotta Decl."), dated Oct. 17, 2019 [dkt no. 17-1].)  On August 31, 2018, Defendants' counsel replied, pointing out that Defendants had sold neckties bearing the Mark "as recently as last year[,]" that Defendants had "imminent plans" to sell additional Mark-bearing goods, and requesting that Mr. Saleh abandon his trademark applications and cease using the Mark in any conflicting goods or services. (Compl. ¶ 12; Margiotta Decl. Ex. B [dkt. no. 17-2].)   On September 6, 2018, Mr. Saleh's counsel responded to Defendants, requesting "invoice proof of each sale for the years 2016 and 2017 under the SULKA mark . . . [and] all documentation reflecting" Defendants' future plans to use the Mark.   (Margiotta Decl. Ex. C [dkt. no. 17-3].)  On September 14, 2018, Defendants' counsel again responded to Mr. Saleh's counsel, providing sales invoices of Mark-bearing neckties from 2016-17, and, in the interest of "amicably resolv[ing] any potential conflict[,]" reiterating their request that Mr. Saleh withdraw his applications and abstain from using the Mark.  (Compl. ¶ 12; Margiotta Decl. Ex. D [dkt. no. 17-4].)

Nearly a year later, in July 2019, Defendants' counsel in India filed a lengthy submission--a "Counterstatement"--in a pending trademark proceeding initiated by the Indian Trademark Office related to the validity of Defendants' 'SULKA' mark.  (See Declaration of Milton Springnut ("Springnut Decl."), Ex. B (the "Original India Submission"), dated July 20, 2019 [dkt. no. 23].) In that submission, Defendants' Indian counsel stated that the 2018 correspondence, see supra at 4, had "categorically stated that any use by Mr. Saleh of the 'SULKA' mark would infringe its rights and demanded that Mr. Saleh cease his plans and abandon his pending trademark application."  (Id. at 8.)  Shortly after Plaintiff filed the instant action, Sulka amended its submission to the Indian Trademark Office, removing its characterization of the 2018 correspondence with Plaintiff's counsel.  (See Margiotta Decl. Ex. G ("Amended India Submission"), dated October 3, 2019 [dkt. no. 17-7].)  Defendants aver that the statements made in the Original India Submission were made by Sulka's Indian counsel without knowledge of Sulka's attorneys in the United States and that Sulka's Indian counsel was instructed to withdraw the characterization completely once United States counsel learned of it.  (Reply at 13.)  The Indian trademark proceeding remains pending.

Shortly after the filing of the Original India Submission, counsel for Mr. Saleh got back in touch with Sulka's attorneys.

In a letter dated August 19, 2019, Mr. Saleh informed Sulka that "all the requisite arrangements have been made" for Mr. Saleh to sell goods bearing the SULKA mark in the United States.  The letter added that "unless we hear any objections from you, [Plaintiff] intends to commence such offering on September 2, 2019."  (Def. Mem. at 2.)  Sulka did not respond to the August 2019 letter.

## II.  LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

A district court properly dismisses a claim for lack of subject matter jurisdiction when it "lacks the statutory or constitutional power to adjudicate it."  Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000); see also Fed. R. Civ. P. 12(b)(1). Upon a defendant's motion to dismiss for lack of subject matter jurisdiction, the plaintiff must affirmatively demonstrate jurisdiction by a preponderance of the evidence.  Sasson v. Hachette Filipacchi Presse, No. 15 civ 00194 (VM) (SN), 2016 WL 1599492, at *2 (S.D.N.Y. Apr. 20, 2016); Giammatteo v. Newton, 452 F. App'x 24, 27 (2d Cir. 2011) (citing Makarova, 201 F.3d at 113).

In considering a 12(b)(1) motion, the court "generally must accept the material factual allegation in the complaint as true[,]" but "does not . . . draw all reasonable inferences in the plaintiff's favor." Bruce Winston Gem Corp. v. Harry Winston, No. 09 civ. 7352 (JGK), 2010 WL 3629592, at *1 (S.D.N.Y. Sept. 16,

2010).   In fact, where jurisdictional facts are in dispute, a district court has the "power and obligation" to refer to evidence outside the pleadings.  Id.; see also Makarova, 201 F.3d at 113 (citing Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).  In so doing, the Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue," but it "may not rely on conclusory or hearsay statements contained in the affidavits." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir.2004) (citations omitted).

B.   Declaratory Judgment Act

The Declaratory Judgment Act ("DJA") states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interest party seeking such declaration."  28 U.S.C. § 2201(a). "Actual controversy" amounts to a "substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Halo Lifestyle LLC v. Halo Farm, Inc., No. 18 civ. 9459 (PAE), 2019 WL 1620744, at *3 (S.D.N.Y. Apr. 16, 2019) (citations omitted).

A plaintiff seeking declaratory judgment is not required to show an actual threat of litigation.  Bruce Winston, 2010 WL 3629592, at *4 (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)).  However, the "threat of future litigation

remains relevant in determining whether an actual controversy
exists." Nike, Inc. v. Already, LLC, 663 F.3d 89, 96 (2d Cir.
2011). If the declaratory relief sought involves potential
trademark infringement, the plaintiff must as a "necessary
requirement" establish that they "engaged in a course of conduct
evidencing a definite intent and apparent ability to commence use"
of the mark at issue. Bruce Winston, 2010 WL 3629592, at *4
(quoting Starter Corp. v. Converse, Inc., 84 F.3d 592, 595-96 (2d
Cir. 1996)).

Even where a plaintiff has demonstrated existence of an actual
controversy sufficient for jurisdiction under the DJA, district
courts retain "broad discretion" in choosing whether to assert
such jurisdiction. Rolex Watch U.S.A., Inc. v. PRL USA Holdings,
Inc., No. 12 civ. 6006, 2015 WL 1909837, at *3 (S.D.N.Y. Apr. 27,
2015); see also MedImmune, 549 U.S. at 136. A district court must
hear a declaratory judgment action where it "will serve a useful
purpose in clarifying and settling the legal relations in issue or
when it will terminate and afford relief from the uncertainty,
insecurity, and controversy giving rise to the proceeding. Bruce
Winston, 2010 WL 3629592, at *6 (internal quotation marks omitted).

III. DISCUSSION

The Court concludes--again--that it lacks subject matter
jurisdiction under the DJA because there does not yet exist a

justiciable controversy between the litigants.  Despite Mr. Saleh's assertions to the contrary, the reality is that not much has changed since July 2019, when this Court dismissed Mr. Saleh's first request for declaratory relief.  Saleh v. Sulka Trading Ltd., 2019 WL 3711770, at *9 (S.D.N.Y. Jul. 15, 2019).

The most notable changed circumstance since the Court's original ruling is the trademark proceeding in India.  To review: in that proceeding Sulka's counsel filed a Form of Counterstatement that contained a characterization of the parties' 2018 correspondence--which was later removed from the submission--as Sulka "caution[ing] Mr. Saleh that any use of the "SULKA" mark would infringe its rights and demand[ing] that Mr. Saleh cease his plans and abandon his pending trademark application."  See supra at 4-5.  Mr. Saleh has taken this language for a "manifestation of Sulka's position that [Mr. Saleh and his partner] are worldwide infringers of its trademark," (Opp. at 12).  Sulka acknowledges that this was an "unfortunate characterization" made by its attorneys in India, a claim that Mr. Saleh brusquely asserts is "self-serving nonsense."  (Id.)[3]

---

[3] The tone of the parties' briefing is, at points, remarkably combative.  Here, the sage advice of the Sixth Circuit Court of Appeals comes to mind: "[t]here are good reasons not to call an opponent's argument 'ridiculous' . . . . The reasons include civility; the near-certainty that overstatement will only push the reader away; . . . and that, even where the record supports an

(Footnote continues on the following page.)

For several reasons, the Court disagrees that the Indian proceeding represents the sea change that Mr. Saleh thinks it does. First, and most importantly, Mr. Saleh admits that the language in the original counterstatement is a "characterization" of the 2018 correspondence between the parties.  Mr. Saleh, however, cannot escape the fact that the substance of that very correspondence was previously before this Court and did not serve to demonstrate an actual controversy for purposes of the DJA. See 2019 WL 3711770, at *2-3.  Second, Mr. Saleh's assertion that Sulka believes him to be a "worldwide infringer" of the SULKA mark is belied by the August 2019 correspondence, which, critically, took place shortly after the filing of the Original India Submission.  See supra at 5-6.  There, Mr. Saleh directly informed Sulka of arrangements purportedly being made to offer products bearing the SULKA mark in the United States but did not receive any response from Sulka threatening litigation of any sort.[4]  Third, even assuming arguendo

---

extreme modifier, the better practice is usually to lay out the facts and let the court reach its own conclusions . . . But [] the biggest reason is more simple: the argument that [the litigant] derides as ridiculous [may be] correct."  Bennett v. State Farm Mut. Auto. Ins. Co., 731 F.3d 584, 584-85 (6th Cir. 2013)(internal quotations and citations omitted).

[4] Mr. Saleh generally suggests that Defendants are playing possum. (See Opp. at 2 (Arguing that Defendants "[do] not wish [their] history of abandonment to be examined, so [their] strategy is to feign disinterest now, attempt to resuscitate [their] business, acquire new rights in the SULKA mark, and then protest against Saleh's business at a later date."))  Presumably, he would apply

(Footnote continues on the following page.)

that Sulka's statements in the original Indian submission evidence that they are harboring thoughts of litigation against Mr. Saleh at some undefined point in the future, those thoughts are not sufficiently "definite or concrete" to create an actual controversy for purposes of the DJA and Article III of the Constitution.  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007).[5]  At this juncture, the most charitable interpretation of the evidence provided by Mr.

---

the same contention to the August 2019 correspondence (or the lack thereof). However, from what the Court can tell, he has not provided any affirmative evidence for this proposition.

[5] Moreover, to the extent that Mr. Saleh is arguing that the Indian proceeding itself creates a justiciable controversy here in the United States, that position is unavailing.  While it may well be that there is a live controversy taking place in India, "trademarks are [nonetheless] creatures of the marketplace and countries in which they exist, and, thus, are inherently territorial." New Look Party Ltd. v. Louise Paris Ltd., No. 11 CIV. 6433 (NRB), 2012 WL 251976, at *4 (S.D.N.Y. Jan. 11, 2012).

   Notably, the proceeding in India appears analogous to a proceeding before the Trademark Trial and Appeal Board ("TTAB") in the United States. And even the existence of a parallel TTAB proceeding here does not on its own serve to create an actual controversy under the DJA.  See Bruce Winston, 2010 WL 3629592, at *5 ("The existence of a dispute before the TTAB is insufficient to establish sufficient adversity for purposes of a declaratory judgment action.")(citing Progressive Apparel Group, Inc. v. Anheuser-Busch, Inc., No. 95 Civ. 2794 (DLC), 1996 WL 50227, at *4). See also Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc., 784 F. Supp.2d 391 (S.D.N.Y. 2011) (granting motion to dismiss declaratory judgment action where applicant's proposed mark was disputed before the TTAB and defendant's cease and desist letter demanded Plaintiff abandon pending trademark application, but did not claim infringement or contest Plaintiff's continued use of the mark.).

Saleh suggests that any threat of litigation is at best nebulous. This is not enough to create jurisdiction pursuant to the DJA.

Furthermore, the Court of Appeals in affirming the Court's original dismissal emphasized that "there were significant reasons for the district court to be skeptical that Saleh was, in fact, prepared to enter the U.S. market."  957 F.3d at 355-56.  That skepticism, while perhaps slightly diminished, lingers today. Considering the totality of the circumstances, Mr. Saleh has still not shown that he has "engaged in a course of conduct evidencing a definite intent and apparent ability to commence use" of the SULKA mark.  Bruce Winston, 2010 WL 3629592, at *4.

Mr. Saleh acknowledges that his business is a "fledgling" one, (Opp. at 2), but suggests that this is primarily the result of "uncertainty" created by Sulka's "feigned lack of position," i.e., he does not want to take more aggressive steps to develop his business only for Sulka to try to force him to rebrand through litigation.[6]  The Court is sympathetic to Mr. Saleh's plight, but that is not enough to create a justiciable controversy for purposes

---

[6] (See Saleh Sur-Reply Decl. ¶ 15 ("While we have already invested significant sums in developing our business, because of [Defendants'] active opposition both in the United States and in India, this has created major uncertainty about our use of the SULKA brand and whether at the end of the litigation process we will be permitted to use this mark . . . Because of this uncertainty, I have to take a 'go slow' approach and am hesitant to make large investments in brand development that may be wasted if we are forced to change our name at a later date.")

of the DJA.   Importantly, it is Mr. Saleh's burden to "affirmatively demonstrate jurisdiction by a preponderance of the evidence."  Sasson, 2016 WL 1599492, at *2.

Here, Mr. Saleh has attempted to meet his burden primarily through two declarations--one filed with his opposition papers[7] and one filed as a sur-reply declaration--detailing the extent of his various business activities. In those declarations, Mr. Saleh asserts that he has invested more than $60,000 in building his business, (Saleh Decl. ¶ 6), including:

- Conducting market research and traveling to meet potential suppliers, (id. ¶¶ 6(a), 6(b));

- Purchasing the domain name sulka-phulka.com and engaging a web design company to stand up the website, (id. ¶¶ 6(e)-(g);

- Contracting with manufacturers to produce goods bearing the SULKA mark and with shipping services to ship goods to the United States, (id. ¶ 6(h); and

- Working with online retail sales portals such as Amazon to sell apparel to consumers in India and Thailand, id. ¶ 6(j), and registering with Amazon to sell products to consumers in the United States, (id. ¶ 7; see also Saleh Sur-Reply Decl. ¶ 16.)

These statements are all well and good, but there is a major pitfall: for the most part, Mr. Saleh provides the Court with no way to evaluate these facts beyond his bare say-so.  Indeed, he has not provided any hard evidence whatsoever to support these

---

[7] (See Declaration of Abdul Rehman Karim Saleh in Opposition to Motion to Dismiss ("Saleh Decl."), dated November 13, 2019 [dkt. no. 24].)

statements about the growth of his business--he has supplied no records that detail his arrangements with suppliers and manufacturers and he has provided no details to support his contention that he is ready to ship to customers in the United States.  Given how quickly Mr. Saleh filed his second action after the dismissal of his first request for declaratory relief, this lack of verifiable information about these steps raises questions as to the actual scope of Mr. Saleh's business and his "apparent ability," Bruce Winston, 2010 WL 3629592, at *4, to use the SULKA mark.

Mr. Saleh has also noted that he is "expecting to be offering product through Amazon in the United States by the beginning of 2020." (Saleh Sur-Reply Dec. ¶ 15.)  He similarly says that he has "initiated the process of using Amazon.com and other selling platforms, such as Alibaba.com and eBay.com, to offer and sell [SULKA-branded products in] the United States[.]" (Compl. ¶ 6.) These are the same types of vague, hypothetical statements that plagued Mr. Saleh's original request for declaratory relief.[8] Here, that Mr. Saleh "expects" to sell products through Amazon

---

[8] Indeed,  the Court of Appeals affirmed the Court's prior finding that Mr. Saleh's allegations that he "might use his existing shipper, or he might contract with a different shipper; he might process payments through PayPal, or perhaps a different processor; [and that] he might contract with unnamed and unspecified 'additional on-line portals' to sell his wares," were "hypothetical possibilities" that "are not enough to create" a justiciable controversy. See 957 F.3d at 355.

provides the Court no basis for finding that he is imminently prepared to do so.  Similarly, saying that he "initiated" the process to sell goods using various online portals could mean anything--for example, Mr. Saleh could have registered with those services without actually being ready to ship goods to customers in the United States.  These broad, forward-looking statements thus provide the Court no basis to find that Mr. Saleh has the ability to use the SULKA mark in commerce in the United States to a degree sufficient to confer jurisdiction under the DJA.

Moreover, the one piece of information that the Court can verify, i.e., Mr. Saleh's use of the domain name sulka-phulka.com, does not materially strengthen Mr. Saleh's renewed case for declaratory relief.  Defendants argue that the website (and Mr. Saleh's business) is a sham, pointing out that Mr. Saleh (or Mr. Saleh's web designer) copied the website almost wholesale from a template, forgot to update the website's copyright notice (which says "Seven Store" and not "Sulka Phulka"), ostensibly used clip art from the internet to create many of the products available for sale on the site, and used the same photograph of the SULKA mark on a neck-tag for all of the t-shirts available on the website. (Reply at 1-2.)  Moreover, when Defendants' counsel attempted to order products from the website they did not arrive until two days after that fact was pointed out to the Court.  (Id. at 2.)    To his credit, Mr. Saleh does not shy away from these issues--he

acknowledges some of the issues with the website, (Saleh Sur-Reply Decl. ¶ 4), but otherwise argues that the website is legitimate and was constructed using industry-standard practices, (id. ¶¶ 4-13). Mr. Saleh further contends that the failure to ship the order to Defendants' counsel was the result of a "programming error" that was quickly corrected. (See Saleh Decl. ¶¶ 13-15.)

The Court, however, does not need to find that Mr. Saleh's website is a sham to conclude that it does not demonstrate his ability to use the SULKA mark in the United States. Even accepting all of Mr. Saleh's explanations about the functionality of the website as true, the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is not required to "draw all reasonable inferences in the plaintiff's favor." Bruce Winston, 2010 WL 3629592, at *1. Here, the most reasonable inference to be drawn from the multitude of issues with the Sulka Phulka website is that Mr. Saleh's business is perhaps more "fledgling" than he would care to admit. Again, it is Mr. Saleh's burden to affirmatively demonstrate jurisdiction by preponderance of the evidence, and the Sulka Phulka website simply does not amount to compelling evidence that he is ready to immediately use the SULKA mark in commerce in the United States.

While the Court has elected to dismiss Mr. Saleh's complaint in its current form, it is doing so in significant part because of Mr. Saleh's failure to supply the Court with verifiable information

about the extent of his business activities directed at the United States.  Accordingly, and assuming that Mr. Saleh is capable of supplying that information, the Court does not believe that amendment of his complaint would be futile.  Dismissal will thus be without prejudice to Mr. Saleh's filing of an amended complaint.[9]

IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [dkt. no. 15] is GRANTED without prejudice.  Mr. Saleh shall file an amended complaint no later than August 19, 2020.  If an amended complaint is not filed by that date, the dismissal shall come with prejudice.

**SO ORDERED.**

Dated:   New York, New York
         July 20, 2020

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge

---

[9] In light of the Court's conclusion that it does not have subject matter jurisdiction because there is no justiciable controversy between the parties, it does not reach the separate issue of whether, in its discretion, it should refuse to retain jurisdiction over this declaratory judgment action.  See Dow Jones & Co., Inc. v. Harrods Limited, 346 F.3d 357, 359 (2d Cir. 2003) (citing Wilton v. Seven Falls Co., 515 U.S. 277, 282-83 (1995))(noting that district courts retain discretion "to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear.").